KINGMAN, APP'T. *v.* KINGMAN, AP'EE.

Ordinarily, an application for an allowance to a widow, made under § 1, ch. 165, Rev. Stat., should be made as soon as the inventory of the estate is returned.

Lapse of time, and delay in making an application for an allowance to a widow, such as will cause embarrassment and difficulty in the settlement of the estate, may be good ground for a refusal to make the allowance.

Where the intestate died on the 31st of May, and letters of administration were taken out on the 6th of June, and an inventory returned on the 5th of July, and the widow made no application for an allowance till the first day of August—*held*, that the delay was not unreasonable, it appearing that a part only of the personal estate had been disposed of by the administrator, prior to the application.

The allowance to a widow, under § 1, ch. 165, Rev. Stat., (Comp. Stat., ch. 175, § 1,) is for her "present support" only. It is not a gift, nor intended as a compensation for any apparent injustice to which she may be exposed by the statute of distribution, or the will of her husband.

Where an allowance of $1250 was made by the judge of probate to a widow, under § 1, ch. 165, Rev. Stat., and an appeal was taken by the heirs from the decree, and the superior court reversed the decree, and ordered that an allowance of $750 should be made, instead thereof—*held*, that neither party should recover costs of the appeal.

APPEAL, from the decree of the judge of probate of this county, whereby there was allowed to Mary P. Kingman, the widow of John Kingman, deceased, for her present support, the sum of *$1250.* The parties agree to the following facts:

John Kingman, the husband of the appellee, died intestate, May 31, 1854, and an administrator on his estate was appointed on the 6th day of June following.

The appraisal of his estate was as follows:

Stock in banks and in Boston and Maine Railroad, ................................$12,738 00
Promissory notes,............................    400 00
Other personal property,.....................  1,561 75
                                               ─────────
                                               $14,699 75
Real estate,................................. 10,420 00
                                               ─────────
    Whole amount,.........................$25,119 75

Kingman *v.* Kingman.

On the 5th of July, 1854, the inventory of the estate was returned, and it was decreed that the estate should be settled in the insolvent course. On the same day the widow petitioned for an assignment of her dower in the real estate.

On the 12th of July following, dower was assigned to the widow, by a committee, the assignment was approved of and agreed to in writing by all the heirs, and the widow then entered upon the real estate so assigned to her, and took and received the crops and rents thereof.

The crops on the dower, for that season, consisted of the following:

Hay, 11 tons, (part of which was pressed and sold
    by the widow, in the fall, for $82 59 net, and the
    rest was consumed by her stock,) net value, .... $139 37
Corn, 37 bushels, (eight of which were sold by her,)
    net value, ....................................... 29 00
Oats, 10 bushels, and beans, one-half bushel, ..... 5 70
Salt hay, ......................................... 12 00
                                          $186 07

Parts of the dower, consisting of buildings, are rented by the widow, at $180 a year; out of which she has to pay $8 a year for aqueduct water for the buildings; and she has expended $52 16 in alterations of the buildings. And immediate repairs to the amount of $110 are necessary on the house and other buildings assigned to her.

On said 5th day of July, the widow first employed counsel, and the administrator on said estate, John W. Kingman, requested said counsel to petition for an allowance, at the probate court then in session, but the counsel declined so to do; and on the same day, the administrator applied for and obtained license to sell the goods and chattels. On the 21st and 29th of the same month, the administrator sold goods and chattels appraised at $795 75.

Before these sales, the widow, with the consent of the administrator, selected and took farming stock, provisions, fire-

wood, furniture, and a pew in a church, all appraised at $350 50, and gave him a receipt for the same, as a part of her allowance.

On the 1st day of August, the assignment of dower was affirmed by the judge of probate; and it was then decreed by the judge that the widow " be allowed, in such articles as she may select out of the inventory of the personal estate of said deceased, at their appraised value, the sum of $1250, for her present support." From that decree this appeal is taken.

The bank and railroad stocks, and the rest of the personal property, were sold by the administrator, under said license, after said allowance to the widow was granted.

The widow and her deceased husband had been married twenty-two years. She never had any children. At the time of their marriage, he had four children living, by a former wife, of the ages of six, eight, eleven and thirteen. At his decease, the widow was sixty-five years of age.

On the 24th day of May, 1854, the deceased executed an unconditional bond to his son, Charles H. Kingman, the appellant, for the payment of $12,000, on demand, and another bond of the same tenor and amount, to the other son, John W. Kingman, the administrator. No consideration was expressed in said bonds, and they were without any valuable or money consideration.

There are no claims of any consequence against the estate, except said bonds, and their validity is contested by the appellee.

The appellant set forth and assigned his reasons for his appeal, substantially as follows:

1. Because the sum allowed was extravagantly large, and altogether beyond what the necessities of the appellee required, or the true spirit and intent of the statute authorize.

2. Because the decree granting the allowance was not made until after all, or nearly all, the goods and chattels

belonging to the estate had been sold by the administrator, at public auction, under license from the judge of probate.

3. Because the decree was not made until after dower had been assigned and set off to the appellee, and rents and profits had accrued to her therefrom, amply sufficient for her comfortable support and maintenance.

4. Because, under the circumstances under which the decree was made, the appellee was not by law entitled to an allowance, and the judge of probate had no power or authority to make the decree, or to grant the sum that he did, or any other sum, to the widow, for her present support. The appellee being in the lawful possession of a portion of the estate of the deceased, amply sufficient for her support at any time, and neglecting to obtain a decree for her allowance, until after the assignment of her dower, and after she had actually received a large income therefrom, and until after the goods and chattels had been all, or nearly all, sold by the administrator, at auction, under license from the court, is now barred from obtaining any allowance, and the decree granting the same is against law, inequitable, and prejudicial to the rights of the appellant.

5. Because the appellee selected " out of the inventory of the personal estate of the deceased," whatever articles she desired, before the sale at auction, and the articles so selected amounting to about $350, were then delivered to her by the administrator on the estate ; and when the allowance was granted, the heirs-at-law notified the judge of probate of these facts, and consented and desired that an allowance sufficient to cover and include these articles so selected might be granted, but the judge refused so to do. And the appellant alleges and affirms that said sum of $350 was of itself as large and ample an allowance as said judge of probate could reasonably have granted to the appellee, under the circumstances of the estate, if, by law, he could have granted any sum whatever ; and that said appellee having then selected, out of the inventory, such articles as she de-

sired, the judge had no power to grant the appellee any other or larger sum.

*Christie & Kingman,* for the appellant.

We rely upon the several points stated in the reasons for appeal, and cite the following authorities in support of the same. *Mathes* v. *Bennett,* 1 Foster's Rep. 188; *Hubbard* v. *Wood,* 15 N. H. Rep. 74; *Adams* v. *Adams,* 10 Met. Rep. 170; *Brown* v. *Hodgdon,* 31 Maine Rep. 65.

*Perley* and *Doe,* for the appellee.

We contend, 1. That the amount of the allowance was reasonable. In *Brazer* v. *Dean & a.,* 15 Mass. Rep. 183, the estate was insolvent; and the whole of the personal estate, appraised at $146, was given to the widow as an allowance. In *Washburn* v. *Washburn,* 10 Pick. 374, the personal estate was $6000, real $4000, debts $4000; and the allowance was $1000. In *Crane* v. *Crane,* 17 Pick. 422, the amount of the estate is not mentioned. Dower was set off in April, the widow went into immediate possession, and an allowance of $895 was made in December following. In *Brown* v. *Hodgdon,* 31 Maine Rep. 65, the real estate was $2000, personal $1234, debts $700, and probably more. An allowance of $500 was granted, six months after the probate of the will. In *Hale & a.* v. *Hale,* 1 Gray's Rep. 520, is cited the case of *Whiting* v. *Whiting,* Berkshire, 1847, in which the decree of the judge of probate, allowing $1200 to the widow, the estate being $22,500, was affirmed by the full court. And we understand that it has recently been decided in this court, on the appeal of Samuel McIntire, executor, in Coos, that an allowance of $600 was not unreasonable, although the husband had secured to his wife her support for life.

If the appellee obtains any of the personal property, besides her allowance, it will be after protracted and expensive litigation, which she is in a poor condition to encounter. It

Kingman *v.* Kingman.

is a case of unusual hardship. It is more than a year since the death of the intestate, and, according to the usual course of lawsuits involving so large an amount as $24,000, it will be a long time before the estate will be settled. The dower furnishes no adequate support. The amount of the estate, the age of the appellee, and the situation in which she is placed by the contrivance to defeat her legal rights, entitle her to the most liberal allowance.

2. The sales by the administrator, before the allowance, are immaterial. The allowance was decreed " in such articles as she may select out of the inventory of the personal estate." " Articles" are distinct parts, items or particular things, and include choses in action, as well as chattels in possession. Stocks in corporations are goods, wares and merchandise. *Tisdale* v. *Harris*, 20 Pick. 9; 4 Wheat. Rep. 89, note; *Peaslee* v. *Peaslee*, recently decided in this court, in Hillsborough county.

If the decree is not according the statute, it can now be made right.

EASTMAN, J. The provisions of the statute under which this allowance was made are as follows : " The judge of probate may make to the widow of any person deceased, intestate or testate, the widow not being mentioned in such deceased person's will, a reasonable allowance, out of the personal estate, for her present support; and in the decree of distribution of the estate, the whole, or such part thereof as the judge may deem reasonable, shall be accounted as part of her share." Comp. Stat., ch. 175, § 1.

Upon the facts, as presented by the case, two questions arise ; first, was the allowance seasonably claimed and decreed ? and, second, was it reasonable, such as was contemplated by the statute ?

Unless there be good and substantial reasons for the delay, an allowance ought to be prayed for as soon as the inventory of the estate is returned. It is frequently necessary

to sell the personal property at once, to prevent waste and diminution in value, especially if any considerable portion of it be neat stock or animals that it may be bad economy to keep. Delay in making the application will oftentimes embarrass and retard the settlement of the estate, and be injurious to all that may be interested therein. In *Hubbard* v. *Wood*, 15 N. H. Rep. 74, it was held that the judge of probate has no authority to decree an allowance to the widow, after the lapse of four years from the death of her husband. That decision was placed upon the ground of lapse of time merely, the learned judge who delivered the opinion of the court, remarking that the facts that the decree was made after the personal estate had been sold, and a decree of distribution passed, were matters that would deserve consideration, in determining the question, if the time when the application was made was not a sufficient reason for their conclusion.

The intestate, in this case, died on the 31st day of May, 1854. Letters of administration on the estate were taken out on the 6th of June following, and an inventory returned on the 5th of July of the same year. On that day the administrator requested the counsel of the widow to apply for an allowance, but he declined so to do. License was then obtained to sell the personal property at auction, and on the 21st and 29th days of that month, sales were made, to the amount of $795 75. Before the sale, however, the widow, with the consent of the administrator, made a selection from the personal estate, to the amount of $335 50, and gave him a receipt for the same, as a part of her allowance. On the first day of August following, the judge of probate made the decree, allowing her $1250, and after this allowance was made, the administrator sold, under his license, the bank and railroad stocks, and the rest of the personal property.

From these facts, it appears that this allowance was made about two months after the decease of the intestate, within thirty days after the inventory was returned, and when

only a part of the personal estate has been sold; and although the application ought to have been made at the time requested, when the inventory was returned, yet we do not think that it was so unseasonably made as to be denied, on that account alone, or that the settlement of the estate had so far progressed as to make that a sufficient ground for its denial.

The receipt of the $335 50 could not estop her from making the application, for it was taken with the proviso that it was only a part of the allowance. And the assignment of the dower could not affect the power of the court to make the allowance. The dower and the allowance are given to a widow upon entirely different grounds, and although the amount of dower, and the time when it is set off, and its income, are considerations that may well be taken into the account, in making the allowance, yet they do not estop the widow from making the application, or the judge from granting the allowance. We think, therefore, that the decree should not be reversed on the ground that it was unseasonably made.

But, second, was the allowance reasonable—such as is contemplated by the statute?

In *Hubbard* v. *Wood*, already cited, it was held that the allowance made by the judge of probate to a widow, under the statute which we have quoted, is intended by the statute to be for her support immediately after the death of her husband. In the opinion there given, it was said that it has been a prevalent impression that at any time before a final decree of distribution, it was competent for a judge of probate to decree an allowance to the widow, however long a period might have elapsed between the death of her husband and the time when the allowance was petitioned for; that it appears to have been thought that the widow, in her forlorn condition, was an object for the kindness and charity of the court, rather than a person whose rights were defined by law, and for whom the law had made a reasonable provis-

ion.  That perhaps the error, if one must exist, has been in the right direction; but that there need be no error, where the statute is administered with proper reflection.  That the allowance is made for the *present support* of the widow, that is, for her support presently upon and immediately after the death of her husband, at a time when the affairs of the estate are not supposed to have been examined, and when there is no specific property which the widow has the right to appropriate for her own support ; that the statute intends the allowance for the supply of those present and immediate wants for which she has, in general, no other resource, immediately upon the decease of her husband.

In *Mathes* v. *Bennett, adm'x.*, 1 Foster's Rep. 188, the principles of *Hubbard* v. *Wood* were fully indorsed, and it was there held that an allowance to a widow, under the statute, is made for her " present support," that is, for her support presently upon and immediately after the death of her husband.  That it is not a free gift to the widow, but is intended to enable her to support herself until her interest in the estate can be set out to her.

In Massachusetts, the doctrine must now be regarded the same as that stated in the cases cited, if not indeed even more stringent.  In *Adams & a., ex'rs* v. *Adams*, 10 Met. 170, it was held that the provision of the statute was intended for the personal and temporary relief of the widow.  The learned Chief Justice *Shaw*, who delivered the opinion of the court in that case, says: We are satisfied of the correctness of the views of the revising commissioners on this subject, in their report, wherein they say : " This allowance for necessaries is not intended to compensate the widow for any apparent injustice to which she may, in any case, be exposed by the statute rules of distribution, or by the will of her husband, but merely to furnish her with a reasonable maintenance for a few weeks, and with some articles of necessary furniture, when she is not otherwise provided with them."

Kingman *v.* Kingman.

And again he remarks as follows : " On the whole, though there may have been some fluctuating views on the subject, we are of opinion that this provision was intended for the present relief of the widow, for the maintenance of herself and children ; that it is temporary in its nature, and personal in its character, and confers no absolute or contingent right of property, which can survive her, or go to her personal representatives. Upon no other ground could this provision be rescued from the imputation of injustice; as it would, in many cases, operate to take property even from creditors already suffering from the insolvency of their debtor—a class always most highly favored. As a small, temporary, personal allowance to a widow left in distress by the decease of her husband, out of articles of little value, most useful to her, but which would do very little towards increasing the fund for creditors, till some arrangement can be made, it is an equitable provision."

These authorities, we think, place the question upon the true ground; that the allowance contemplated by the statute is for the " present support" of the widow, and not in the nature of a gift, nor intended to compensate her for any apparent injustice to which she may, in some cases, be exposed by the statute of distribution or the will of her husband.

In this case, the judge of probate allowed the widow $1250. Was that, under the circumstances, too large an amount? Her dower had been assigned to her; from the income of the land, she received that year $186, and she rented a part of the buildings for $180 more. This would give her, ordinarily, an income of $366 a year. But supposing she expended the first year $170 for repairs and the aqueduct water, she would still have left about $200; and the buildings would be in a good state for future renting. It is suggested in argument that there is a litigation in regard to the personal estate, and the records of this court show it. This litigation may perhaps continue for some

time, before the estate shall be finally settled, and the widow know what she is to receive. The estate, also, is respectably large, for a gentleman residing in a country town in this State. But we are all of opinion that the allowance is too large; and it was probably made under a misapprehension of the true rule of law governing such cases. Considering the income from the dower, twelve hundred and fifty dollars would seem to be altogether more than the " present support," or the immediate necessities or comforts of the widow would require. The estate will, in all probability, be settled in three years at farthest, and if an allowance of $750, which would be $250 a year, for three years, is made to the widow, it appears to us that it will be quite as large a sum as a proper construction of the statute will permit.

Our opinion, therefore, is that the decree of the judge of probate should be reversed, and that the sum of $750 be allowed the widow for her present support.

We are also of opinion that neither party should have costs; for the appellee has prevailed in relation to the most important matters in controversy. *Leavitt* v. *Worster*, 14 N. H. Rep. 565; *Mathes* v. *Bennett*, 1 Foster's Rep. 188; *Griswold* v. *Chandler*, 6 N. H. Rep. 61.